That's the second part. Angela Don Moody v. Scott Farrell in his individual capacity. And first we have Mr. Waits. May it please the Court. Your Honor, this case to me is about the most basic rules of civil procedure you could ever imagine, which is that the Court takes evidence in the light most favorable to the non-movement and accepts what the non-movement says about the evidence as truth. Once you've taken that basic legal principle, none of the issues that the defendant has defended this case on have any merit. There are basically three legal issues that they claim that this case should have been dismissed on or was properly dismissed on. The first one is, as a matter of law, not as any factual inquiry, but as a matter of law, this ex-husband, Mr. Farrell, did not act under color of state law. That's what the district judge ruled, and that's what they want this Court to rule. Your Honor, both sides rely on the same Fifth Circuit cases. And the principles, I think, probably the best statement, there are a large number of statements about this by the Fifth Circuit. One of the panels you were on, Your Honor, Judge King, Dursey O.V. Kmart, 559 F. 2nd, 1244, and it makes it clear that it's a fact question as to whether the individual who acts jointly with a state actor is just a passive force, like somebody turns in a crime, you know, I'm reporting a burglary, or whether that individual is overcoming or influencing the state actor. It's a fact question for the jury, and I'd refer the Court to. So what kind of conduct is necessary to turn that into a state action by an individual? Well, the conduct in this case where it's a persistent desire to have, you know, for the state to take action, where he just won't leave the officer alone. He reported this a year before. In 2012 he made this report. It's all about, contrary to what they say, it's all about child support. But a year before he had gone to this deputy and tried to get her arrested, a year before in November of 2012, and the deputy, taking the evidence and the lie most liable to her, just put him off and said, well, take this to justice court. That's, of course, the misdemeanor court in Mississippi. And then the prosecutor in the justice court would not pursue it and said, you can't pursue something like this under the misdemeanor statute unless there's been some threat made. So the officer had been gone for like two months on leave. And, by the way, they're saying the delay was because he had a long leave. But, in fact, he was only gone two months, and they had six other investigators that worked for the Lowndes County Sheriff's Department. And the communication was all, they say, by Facebook message. They were Facebook friends, the officer and the ex-husband were Facebook friends, and they communicated by social media, which they both deleted. But they admitted there were a large number of times that the ex-husband would contact the deputy sheriff and say, and here's the evidence, and I hope this is proper for me to say this, but according to our evidence, what he said was, I want that bitch arrested. So did that make it state action? What made this a state action by her ex-husband? Well, what made it, what gave the jury the authority to decide whether it's state action is the fact, is the number of things that he did to be the active procurer. For example, we quote, it's on page 11 of my brief, is I just quote this affidavit by her father. He said, Deputy Cooper told us Farrell was calling three or four times a day to find out if Angela had been arrested. Had gone for a year. Now he's calling three or four times a day to find out if she's been arrested. He told him that when the deputy suggested, well, I'll just go to her and talk to her, and we'll try to get this resolved. His response was, no, I want that bitch arrested. He told, according to the affidavit, Cooper said that Farrell had told him, I'll go to the newspaper about the sheriff's department. I'm not getting any justice from the sheriff's department. I'll go to the newspaper about it. And then Cooper said, I want Farrell off the sheriff's department's back, and Farrell's not going to let this go. In other words, the jury could find, I'm not saying that they'd have to find, but they could find that he's just overbearing the will of the deputy sheriff until he gets an arrest made. And then you have the testimony of the sheriff. The deputy was not adamant about his deposition. He said, well, I had my concerns about this. This looks like just a child support matter, or words to that effect. So we just say that there's fact questions there as to whether the, what they're going to tell you, Your Honor, is, well, the deputy made an independent investigation. Well, that's a fact question for the jury as to whether he did or not. If you look at his affidavit that he filed in November of 2013, and he's obviously bringing it under a Mississippi statute, but he talks about events that happened in 2012 and said what happened back in November of 2012. So a jury could infer that this was brought about not because the deputy made an independent investigation, but because he just wanted to get this guy off his back. So that's why there's a fact issue on whether there was acting on the color of state law. Now, didn't we have a judge that signed the arrest warrant? Yes, sir. And then a different judge, by the way, I don't know what significance this has, but the judge apparently didn't understand the charge. He charged him under a, he signed the warrant under a different statute than what the affidavit had been made under. I don't know whether it has any significance. But then when it was tried before, I believe it was tried before a different judge, Judge Cook, and he characterized this as being a child support matter. He said our jails will be full if every time a woman gets after her ex about not paying the child support, we're going to have an arrest. So the judge has characterized it as just being a child support matter. Well, but we also have the warrant. I'm sorry, following up on yours, following up on Judge Prado, as he could have done himself. I'm sorry. You still have an independent determination of probable cause. Yes, Your Honor. And we don't have any kind of stalking and harassing of the judge by Coop, by Farrell. I know you cited a case, but it does seem to me that this breaks the chain of causation. Your Honor, I just respect, with all respect, and for me with some of the cases the Court said about that, but Malivie Briggs from the United States Supreme Court holds, that's a distinct holding, that if an arrest warrant is issued without probable cause, the fact that the judge issued it does not break the chain of causation. In that case, it doesn't excuse the officer that got the warrant without probable cause. So we think Malivie Briggs has cited our breakage. It breaks the chain of causation of this pressure. And so we still need a determination that the warrant has some facial, is based on some facial claim of probable cause that could be made. And if that determination was made in the way that a warrant can probably be issued, then any effort of State action or otherwise by Farrell, that's what's broken. So would you agree that if the warrant is facially valid, that that's all that would be necessary to show that the chain has been broken? No, sir, I wouldn't. But in the first place, maybe the point I earlier said, whether it's facially valid is kind of an interesting question because he signed an affidavit based on one statute and the warrant was issued on another statute. But in any event, the issue of proximate cause is essentially a question for the jury. The initiator of all of this is Farrell. And I've tried to remember what the reason the United States Supreme Court is on proximate cause in the employment context. But if you can show that a person procured an illegal act, then that can be a proximate cause. It has to be an illegal act. We have issues and searches of whether the warrant actually was based on probable cause or not. And you don't retry that, but you do decide. And it seems to me that would be the issue here. Was there enough to justify the issuance of that warrant? And the oddity here of it being under the wrong statute, I don't know what to make of that. Well, I don't think I saw no statute. If he's basing it on what the officer said as being the probable cause, then hide the warrant issue. That's the only thing I'd say about that. But to me, the issue is simply one of probable cause, proximate cause, did Farrell's actions proximately cause the arrest. Was there anything false in the affidavit by Officer Cooper? I would say no. I'd say there's nothing false. That is, that she had repeatedly texted him and he had asked her to stop. But now when you look at whether she stopped, to me that's still a First Amendment violation regardless. But he didn't mislead the judge in his affidavit. No, all I'm saying, Your Honor, is the fact that the judge issued a warrant, and I guess I'm respectfully disagreeing with Judge Salford's comments, that I don't believe that the fact that the judge issued a warrant under Malibu Briggs excuses anybody who caused the warrant to be illegally issued. As far as the record shows, the judge simply took the affidavit signed by the officer that issued the warrant, and I don't believe that breaks any chain of causation or anything under Malibu Briggs. Your Honor, here's something that before I forget about, I want to make this point. I think defense counsel is saying, well, he has under Wyde v. Cole, Your Honor, that's the case that went to the United States Supreme Court and was remanded back here, and this court basically adopted a good faith exception for private actors in that case basically. I wanted to point out what the difference is between that case and this case. When Farrell was trying to get her arrested, there's no evidence that he had any statute in mind, or he pointed out she's violated any specific statute. He just wanted her arrested. The officer came up with this statute, and according to his affidavit, it was 974515 subpart B. That's basically what he tracks in there. But the evidence, according to us, is not that Farrell was relying on some statute. They're going to say, well, he's relying on this statute that's never been. It's on page 8-5 of my briefs where it's quoted, and I did a poor grammatical job, and it might not be clear what I'm quoting, but that's what I'm quoting. But there's no evidence that when Farrell's trying to get her arrested, he's relying on any statute. He just wants her arrested. And, Your Honor, to me, just applying everyday life experiences, the idea that a school teacher who's been left with enormous amounts of bills, she's been left with her house payment four or five payments behind, car payment four or five payments behind, and he won't make the child support. The fact that a woman in that situation starts complaining about the child support, admittedly not in language Billy Graham would use, but in harsh language, to me that is just unthinkable that that's not protected by the First Amendment. I guess the case, you know, that cries out at us is like that Snider v. Phelps. Just about anybody, I'm certain, a military person like Your Honor, Judge Southwick, would read and say what an outrage this is that this deceased Marine is having his funeral, and these religious protesters are out saying, you know, God hates fags, separify homosexuals or whatever and provoking that, and that was held to be protected speech. But to say that it is not protected speech when a woman is trying to collect her child support, to me is just beyond unfathomable. It is protected speech. And let me mention this. His brief spends three or four pages quoting e-mails. He singles out the e-mails that don't mention child support. I just want to defer, Your Honor, a couple of parts of the record. Record page 38 through 440. That's an attachment to his motion where he puts the e-mails in there. Seventy-five percent of them are directly about child support. Exhibit five to our response to motion for summary judgment is the exhibits introduced at the Justice Court. And you'll see that a large amount of them are specifically about child support. Now, there's other comments, such as, you know, she sends him, for example, she sends him, he's on the Internet with a picture of his Mustang he just bought and his four-wheel drive pickup, and she sends him a sarcastic comment about, you know, you can afford that, but you can't afford our child. And degrades him because he doesn't show up to see the child. There's all kinds of degrading things in there. But assuming, just for the sake of argument, I believe all this speech was protected, but assuming for the sake of argument that they can single out things and say, well, this is not protected speech, we still have a question of the fact for the jury, did protected speech motivate his getting her arrested? One other thing. On page, Your Honor, one other page of the record. Page 394. She specifically texts him. She texts him in May, and she tells him, I'm fixing to turn you in to the Alabama Child Support Authorities. Meaning they're going to sue him, you know, of course, when she does that, but that's on page 394. She specifically tells him. Now, she doesn't go to them until October, and then she gets arrested in November. But he denied his deposition and said, I didn't even know she was going to get, you know, she was even going to the Alabama authorities. But a jury could find that his being upset about her going to bring him back to court was the approximate cause of it, in which case it's First Amendment free speech. So, Your Honor, I just, I understand this may sound like it's just a trivial case dealing with the child support or whatever, but if every time a woman, a man doesn't pay his child support and they have a bitter divorce, and she makes efforts in harsh language to collect her child support or to get on him for not supporting his former family, if that's the subject of a criminal matter, I think our whole judicial system is off on the wrong foot. That's the kind of thing that ought to be in chance record or whatever if they're upset about the child support. But it's not a matter that ought to be the subject of a criminal charge. And he must have known that. He must have. If this results stand, if I'm a man out there and I don't want to pay my child support, why don't I just tell my ex-wife, well, listen, you email me anymore about this and I'll have you arrested. And according to the district judge, that is okay. They can do that. Well, there was a statute on the books that said emailing, using email to harass somebody is a crime. Yes, sir. That was my point. The jury could find that that statute had nothing to do with what Farrell did. The deputy made that decision that this could come. But that's a jury defined beyond a reasonable doubt. We're talking about probable cause here. Yes, sir. We're talking about probable cause. Could he have believed that his efforts to collect child support using harsh, tough language and criticizing him for not paying his bills and what he's buying, and I guess the worst thing they may point out, she even emailed his business and said, you better be, the substance of it was he's had fake businesses before or something to that effect. But he couldn't have thought there was anything other than speech if he lives in the United States of America, Your Honor. And the statute, to me, has nothing to do with it. In fact, Judge Biggers noted there was no attack on the constitutionality of the statute. Maybe we could have just being over-broad, but there was no attack on that. We complained about what he did. I'm on the red light. Thank you. Thank you. Mr. Wilson. Good morning. May I proceed? Thank you. Your Honor, I think that I'm very glad to hear Mr. Wade say there's no issue about the constitutionality of the statute because that takes a whole realm of my argument out of play. I agree. There's no issue regarding that. It was not brought up before the court below, and it was not decided before the court below. The issues are both state actor and probable cause. The court has touched very cogently with its questions on the points that are in my argument. But I'd like to go against the guideline that they give the lawyers' argument before the Fifth Circuit, don't delve directly into the facts. We need to dispel that this is all about a child support issue. And the way we do that, and the way we do that to avoid creating an issue of fact, is to look at Ms. Moody's testimony. I examined her about each of these messages that are all exhibits in the record. And as to some of them, they mention child support. But you can't inject a First Amendment protected speech as an escape hatch in one message and use that to cover the penumbra of all of the messages that you send. Ms. Moody, in her testimony, admitted repeatedly as to each of those messages, the ones making fun of his wife being in a wreck, the ones making fun of Mr. Farrell's second marriage breaking up. As to all of those things, she admitted she sent those for no reason connected to getting child support. Variously, she phrased those as it was supposed to be mean, it was supposed to be ugly to him. She admitted to a state of mind that comes within the statute. And when asked directly, would you think that a reasonable person, the probable cause standard, a reasonable person viewing these messages could think that they were harassing? And her answer was yes. So this is not all just about a poor, unfortunate ex-wife trying to get child support. And I don't think we need to delve into the merits of the divorce and who's the bad person. Suffice it to say, she's admitted to the conduct that establishes probable cause. She's admitted she sent the messages. She admitted all the messages were received by Mr. Farrell. She admits that the purpose of many of them was to harass him. She admits that Mr. Farrell told her to stop sending messages, and that nonetheless he was feeling harassed by her messages. And nonetheless, she repeated her behavior. So we need to dispel that at the outset, that this is all a valiant effort to gain some overdue child support. All of the salacious details that are referenced in the brief and are referred to happened well before, and the references are in our briefing, well before the time that Mr. Farrell complained to law enforcement. He only made that complaint after he told her to leave him alone and quit sending the messages. That's the context of this. The timeline over a year is the perfect illustration of why he was frustrated, why he called several times to find out what's going on. He was continuing to get these e-mails and texts after requesting they were stopped. So, yes, he was frustrated, and he wanted it to stop, so he made repeat inquiries to law enforcement. He talked with other law enforcement officers. Detective Reichert, one of the other investigators, is the one who officially opened the case in September, in between when the complaint was made in November of 2012 and when the warrant was issued in November of 2013. Detective Reichert opened the case. He received some of the messages while Investigator Cooper was out. We're using the word investigator properly, so that's their title. But my understanding is there's no investigation of this. This was a cyberstalking, I'll use that label, whatever it is. But the only investigation was to look at the messages that Farrell provided to law enforcement. Is that the investigation? No, sir. The investigation included other facets as well. First, he did refer Mr. — the investigator, or the law enforcement officer, referred Mr. Farrell to the prosecuting attorney to see if this would fit within the misdemeanor statute. She said it didn't. Mr. Cooper, the law enforcement officer, met independently with the prosecuting — I'm not talking about some legal analysis, but investigation of the facts. The only facts are what's on the face of the emails. Is that correct? That, and Mr. Farrell telling him this is going on. I think Mr. Cooper, Detective Cooper, tried to get information from Ms. Moody during the investigation. He attempted to conduct that investigation, but she wouldn't talk to him and told him to talk to her attorney. He tried to get to the attorney, all before signing the affidavit, to find out if there was anything else that needed to be considered. And both of them said, no, we're not talking to you. We're looking at a fact question. Maybe you don't — maybe there's not one. We're looking at the question, though, whether it's a fact question, of whether this was State actor or not. Because of the fairly frequent contact between Farrell and Cooper that at least has evidentiary support in the record. It seems to me that at least that is getting close to a jury question. Why not? Because it's not joint action. The test is a joint action test. It requires something more. All of the cases that analyze this issue do so in situations where the State has ceded or somehow given some direction of the State's power to a private citizen by way of joint action. In all of the shoplifting cases that have been decided, Sims versus Jefferson Downs, Daniel Ferguson, and all of those cases that talk about accessing the justice system does not make you a State actor. The unifying issue that either caused it to be State action or caused it not to be was whether there was a preconceived plan, an agreement amongst the State official and the private citizen to achieve an unlawful purpose. There's no way that you can reasonably extrapolate that someone, by continually complaining of continued criminal conduct, is jointly acting. He didn't seek the warrant. He didn't sign the affidavit. Mr. Farrell didn't meet with the detective and the prosecuting attorney. All of their actions were done separately. They were not done jointly. All Mr. Farrell did was access the justice system. The case law that this Circuit has handed down, this Court has specifically said that execution of a private party by a sworn complaint, which forms the basis for arrest, is not sufficient to make the party's acts State action. Execution of a party? Sir? Did you say execution of a party? Execution by the party of a sworn complaint. I'm sorry if I misspoke. You may not have. That sounds like a fairly severe. That would be in a different court in a different situation, and I apologize if I misspoke. Even providing erroneous information to an officer, even lying to an officer. Well, let's look at the Brookshire Brothers case, which you're probably more familiar with than I am. It seems to me that you're talking about this preconceived arrangement, not preconceived prior arrangement. It seems to me the first time some significant business person, like a Brookshire's brother, whatever, owner, manager, works out an arrangement that when I tell you to arrest somebody, I want you to arrest them, it seems about early in that arrangement, before it's really understood, you could have a significant enough person or a bothersome enough person that convinces law enforcement to act really independently of what they normally would, but act because of the persistence, the harassment almost, of the private party. It seems like Brookshire Brothers at least supports something along those lines, although those are not the facts of that case. I think not, Your Honor, and for this reason. I mean, they're not the facts of that case. Yes, sir. But you don't think you could extrapolate from that? No, sir, I don't, because I think Brookshire and that line of cases is limited by its facts in that it's a normal occurrence for a merchant who offers groceries and dry goods for sale to the public to regularly have shoplifters, and the law enforcement comes to Brookshire Brothers or Walmart or wherever they come to on a regular basis. It's the preconceived plan that by designation only, Brookshire Brothers or Walmart can say, this person stole, arrest them, and we'll deal with it in court. That's wherein the state cedes some authority and can attribute state action to a private actor. Independent investigation of any nature. In those cases, they talk about even interviewing the witnesses, the one witness, if there's one witness, talking with the store, as long as there is an independent investigation and proximate cause to arrest determination, that breaks the chain and it's not state action. In this case, we have two degrees of separation, which I think is a very important point. That second degree of separation of having the justice court, even if you assume for argument's sake that Mr. Farrell overrode Investigator Cooper's free will and that Investigator Cooper then took information to the justice court, even if you assume that to be the case, the justice court issued a neutral decision based on the evidence before it. He wants to talk about Malley v. Briggs. What do you say to that? Malley v. Briggs is not applicable to this case because it's uncontested. What's in the affidavit is true. Ms. Moody says the statements in the affidavit supporting the arrest warrant are true. She admits to every element of proximate cause. She admitted that she electronically communicated to Mr. Farrell for the purpose of harassing him. She admitted every one of those things. And so I think that that carries the day. What's our role? Do we look at the warrant? Do we look at the affidavit underlying it and decide now there's no probable cause here? I think you look at the facts and circumstances as they exist and are uncontested at the stage of summary judgment. I may be not incorrect in this regard, but it's my understanding that regardless of any technical defects in the warrant, the issue is whether or not there is probable cause to arrest. And that's manifested in a warrant, and it's a protective measure that a law enforcement officer who's been presented with facts can take them to a disinterested neutral magistrate and say, hey, what do you think about this? But he can arrest somebody without a warrant if there's probable cause, and I think that he had probable cause both at the time he made the decision to arrest, both at the time that he made the decision to seek the warrant, and in retrospect by the admitted testimony of Ms. Moody. She's admitted to every bit of what's alleged in the warrant. She's even admitted to what could in some circumstances be a fact issue, and that's her intent. She's admitted her intent was to send him mean things, and that she knew he felt he was being harassed, and she continued to send him the same messages that had nothing to do with divorce issues. And those are in my brief. I excerpted those, not by any nefarious intent, but to show the Court what we were dealing with. You know, the whole entirety of them are in the record. But suffice it to say, many of those had nothing to do with the First Amendment exercise. And so Malley v. Briggs talks about when there is a taint to the deliberation of proximate cause. Nobody has pointed to any evidence that the proximate cause deliberation was tainted. Nobody has said that anybody lied to either Investigator Cooper or to Judge Phillips who issued the warrant. And so I believe that Malley v. Briggs has no application, Your Honor. Beyond proximate cause and beyond State action, I think that the issue is the State is validly controlling her conduct. Whether or not she is exercising an expression of her First Amendment rights, one, there's not an escape hatch in the statute for that. What's regulated is the conduct of sending those messages. It's communicating to, not communicating about. And it's the repetitive nature of those contacts that invades a person's right to be unmolested in their home by unwarranted, unwanted, and specifically prohibited messages. Our Supreme Court has said that that's valid in a nonpublic forum, in one-to-one contact, in the scope of emails and also in the scope of mail, which email is another variant of mail. Texts are the same thing as phone calls. So I think that we're in a situation where there's been a valid exercise. There are no issues of fact. The only issues of fact, because it's the most important issue, is State action. Because if Mr. Farrell is not a State actor, all of this other stuff is academic. That's where the rubber meets the road. And the only indications that the plaintiff has put forward is that Mr. Farrell complained a lot because he kept getting these messages, that he said, I want that person arrested. Victims of crime want people arrested. The year-long investigation that went on without any charges or without any follow-up on what he perceived was criminal conduct against him, that can be frustrating. That's something that a person is going to deal with, a law enforcement officer or agency is going to deal with regularly, with people that perceive they've been victims of crime and admittedly were in this case. So I think that that does not transform into State action without some credible issue of fact that that tainted the probable cause determination. And there's just nothing other than conjecture to leap from one to the other. In this case, if you accept the plaintiff's argument and if you deem a criminal informant, even if he lies, to be a State actor, you're going to open the floodgates of 1983 litigation to the district courts and to this court in cases that it was never meant to address. Because the Constitution protects citizens from the government. State law protects citizens from citizens. And there's a method there, a malicious prosecution claim, a State law claim, maybe that's designed for the allegations in this case, but not a 1983 claim. The last thing I'd like to talk about is if we get to that point. I respectfully submit that he's not a State actor. Case is closed. Alternatively, there's proximate cause admittedly conceded by the plaintiff, and that forecloses any further investigation. But I respectfully — Are you talking about — what did they concede? Ms. Moody's testimony concedes all the elements of probable cause. Okay. All right. I thought that's what you meant. Go ahead. That's fine. Not Mr. Wade. Mr. Wade, as a legal matter, and I apologize if I created the impression that he had proximate cause, Ms. Moody's testimony, as set out in the brief, on all the issues of the statute and the nature of her intent, I believe, is effectively a judicial admission and a concession that probable cause exists. Even if we get past all of those things, there should be immunity for my client. Lugar, one of the cases, one of the seminal cases on joint action and State action in this context, talks about the need for a good faith or to not chill the citizens' rights to exercise their rights in the criminal justice system or in the civil justice system freely. If you transform every person who makes a criminal complaint into a State actor threatened with constitutional litigation, you have effectively done what Lugar warns against. You've not safeguarded the freedoms of the citizens. You've circumscribed them by causing them to be subject to a set of rules and a set of laws that were never designed to apply to them as non-governmental, non-State actors. Because there is an underlying foundation for immunity to criminal complainants in the malicious prosecution law, I think that qualified immunity as it exists for State actors should be transferable to any private citizen who has been deemed to be a State actor. It's only fair. And in this case, the same qualified immunity that inures to the benefit of Investigator Cooper should inure to my client, Mr. Farrell, as well if he's deemed a State actor. And in that scenario, his intent doesn't matter whether he wants her arrested or not. If there's probable cause, he's qualifiedly immune. I realize that there is precedent that the traditional framework of qualified immunity does not apply to private citizens, even when they've deemed to be State actors. But a case that, coincidentally, Mr. Wade argued before this circuit that went up to the Fifth Circuit and came back, there was a pronouncement that while they are not subject to qualified immunity in the traditional sense under the 1983 analysis, a person deemed a State actor is entitled to a good faith immunity. And that requires a showing that that person, one, two parts. One, acted with malice. State of mind, issues of fact, that's not the focus. Two, that person had to know that their exercise of State authority was unconstitutional. They had to have reasonable knowledge. And in this case, we're not talking about picking the statute, as Mr. Wade suggested. We're talking about accessing the criminal justice system and filing a complaint. And as a result, unless it can be shown that there was no probable cause and no reasonable basis for Mr. Farrell to have filed his complaint, he's entitled to good faith immunity. May I address any other particular point? That's it. Thank you for the opportunity, and I cede the rest of my time. Mr. Wade. Just a couple of things, Your Honor. I'd like to refer, Your Honor, to Exhibit 9 to the defendant's response to the summary judge that that is the affidavit that the officer signed. So when she says it's true, it's just a conclusory affidavit where he tracks the language of the statute, and then he says, On November 28, 2012, Scott Farrell reported he's received numerous text messages, et cetera, after asking him to stop. She's not a lawyer. She can't know whether that's or shouldn't be called upon to say that's First Amendment protected, you know, for her to send those messages. Your Honor, I'd also refer, Your Honor, to page 4 of their brief. And the reason I think it's important is they're quoting in there exactly what happened immediately before he first went to law enforcement in November of 2012. And if you look up at the top there, he does send what he does to tell her not to contact me. It says, Don't text me further unless it is to pick up my daughter. Then everything else she says, if you read it, is nasty language. It all pertains to him picking up her daughter. And she says, Well, you didn't. You know, you were supposed to be here at 730, and you didn't come. You didn't show up. It's pitiful to tell a five-year-old you're coming and you don't come. And I just refer the court family to Snyder v. Phelps. That's the most recent time the United States Supreme Court has talked about this situation where unwanted speech. That is, they argued that the father of the Marine didn't want to hear these homosexual protesters out there at his son's funeral. This was unwanted speech. The United States Supreme Court said, Well, we take a very narrow view of that. It's true that the family didn't want him out there, but we take an extremely narrow view of that. In this case, Your Honor, he owes, she's trying to collect her child support, and she's talking about visitation with her child. The fact that the father says, Don't talk to me unless it's about picking up my child. Well, on the chantry court orders, you've got to talk to the father about, you know, picking up your children. So he doesn't have any authority to tell her, Don't pick up to me about child support. Or in this case, he said, Just to pick up my daughter. But she obeyed that instruction, and she used foul language toward him, but that's all she talked about was the situation of picking up a child. So we don't think, Your Honor, the case should be thrown out because on skill cross-examination, he got her to admit, Well, it's true that I did send all of these certain selected e-mails that she said were mean or unwarranted or whatever. Under Mt. Healthy Education v. Doyle, if some of the speech is protected, then it's up to the jury to decide would she have been arrested except for her constitutionally protected speech. Assuming he can show there was some unconstitutionally protected speech, it's just a question of did the constitutionally protected speech cause her arrest and did he cause her arrest. So for those reasons, Your Honor, we ask the court reverse and find these factual questions in this case. Thank you. Thank you. Thank you both. I hope your client-